```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                         ELKINS
```

**KENNETH RICHARD LANE,**

      **Plaintiff,**

**v.**                                      **CIVIL ACTION NO. 2:20-CV-40**
                                                    **(KLEEH)**

**GRAY TRANSPORTATION, INC., and**
**HIRERIGHT, LLC,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT HIRERIGHT, LLC'S MOTION TO DISMISS [ECF NO. 9]**

Pending before the Court is *Defendant HireRight, LLC's Motion to Dismiss* [ECF No. 9]. For the reasons discussed herein, the Motion is **GRANTED**.

## I. INTRODUCTION

On September 21, 2020, the Defendants, HireRight, LLC ("HireRight"), and Gray Transportation, Inc., ("Gray") (collectively, "Defendants"), removed this action from the Circuit Court of Lewis County, West Virginia. [ECF No. 1]. On September 28, 2020, HireRight and Plaintiff Kenneth Richard Lane ("Plaintiff" or "Lane") filed a stipulation enlarging HireRight's time to answer or otherwise respond to Plaintiff's Complaint. [ECF No. 3]. On September 28, 2020, Gray filed a Motion to Dismiss. [ECF No. 6]. HireRight filed a Motion to Dismiss on October 12,

2020. [ECF No. 9]. Plaintiff then filed a Motion to Remand on October 21, 2020. [ECF No. 10]. Plaintiff filed a response to HireRight's Motion to Dismiss on October 27, 2020. [ECF No. 17]. Finally, HireRight filed a Motion to Strike Plaintiff's untimely response to motion to dismiss. [ECF No. 19].

HireRight's Motion to Dismiss [ECF No. 9] is the subject of this Memorandum Opinion and Order.

## II.  FACTS

In the Complaint, Plaintiff Kenneth Richard Lane ("Plaintiff" or "Lane") brings claims of discrimination and wrongful termination. He also alleges that Defendant Gray Transportation, Inc., ("Gray") violated the Wage Payment and Collection Act and that Defendant HireRight, LLC, engaged in unfair practices under the Fair Credit Reporting Act.

Plaintiff was born on January 18, 1953 and was an experienced and licensed "over the road truck driver."[1] ECF No. 1-1, Compl., ¶¶ 5, 6. In July 2018, Plaintiff was hired by Gray as an over the road truck driver. Id. at ¶ 5. Throughout the employment relationship, Plaintiff "met applicable job qualifications, was

---

[1] The Court takes the facts from the complaint and construes them in the light most favorable to Plaintiff Lane. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

qualified for the position which he held, and performed the job in a manner which fully met any legitimate expectations of the defendant." Id. at ¶ 13. Gray provided Plaintiff with a tractor and one or more trailers to perform his job duties. Id. at ¶ 23. He alleges the equipment was in an unsafe condition. Id.

Plaintiff further alleges he was terminated because of his age and "upon his refusal to operate equipment in the course and scope of his employment" because it was unsafe to do so. Id. at ¶¶ 15, 16. Plaintiff asserts discrimination and ill treatment by Gray and was given no legitimate basis for Gray's alleged wrongful conduct. Id. at ¶¶ 12, 17. As a result of the termination in violation of West Virginia Code § 5-11-1 et seq., Plaintiff has suffered "losses of earnings, and has suffered and continues to suffer humiliation, embarrassment, mental pain and anguish." Id. at ¶¶ 20, 21. Plaintiff also seeks all wages and salary for services performed for Gray under West Virginia Code § 21-5-4(b). Id. at ¶¶ 32-34.

Plaintiff also alleges that Gray failed to notify him in writing that he would be subject to a consumer credit report prepared by a consumer reporting agency, Defendant HireRight, LLC ("HireRight"). Id. at ¶ 49. HireRight is a consumer reporting agency as defined by the Fair Credit Reporting Act that provides consumer reports to its transportation customers for employment

purposes. Id. at ¶¶ 38-40; ECF No. 9-3, Exhibit 1, Declaration of Simo. HireRight provided a consumer report concerning Plaintiff to Gray, which was "inaccurate, misleading, and incomplete." Id. at ¶¶ 38-40. The report contained inaccuracies that negatively impacted Plaintiff and he seeks "a statutory penalty from the defendants as well as attorney's fees, litigation costs and all other permitted damages. Id. at ¶¶ 50-52.

On August 20, 2020, Plaintiff filed a Complaint alleging the following causes of action:

1) Discrimination / Wrongful Termination against Defendant Gray Transportation, Inc.
2) Wage Payment against Defendant Gray Transportation, Inc.
3) Unfair Practices against Defendant HireRight, LLC.

Compl., ECF No. 1-1.

### III. LEGAL STANDARD

When a defendant files a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the ultimate burden of showing that jurisdiction exists by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). However, where a court makes a Rule 12(b)(2) determination without a hearing and based only on the written record, as the Court does here, the plaintiff need only put forth a prima facie

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT HIRERIGHT, LLC'S MOTION TO DISMISS [ECF NO. 9]**

showing of jurisdiction "by pointing to affidavits or other relevant evidence." Henderson v. Metlife Bank, N.A., No. 3:11-cv-20, 2011 WL 1897427, at *6 (N.D. W. Va. May 18, 2011); see also New Wellington Fin. Corp., 416 F.3d at 294. The Court must then "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." New Wellington Fin. Corp., 416 F.3d at 294; see also 5B Wright & Miller, Federal Practice and Procedure § 1351 (3rd. ed.).

Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court may exercise personal jurisdiction over a defendant to the same degree that a counterpart state court could do so. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000). Importantly as a result, for a district court to have jurisdiction over a nonresident defendant, the exercise of jurisdiction (1) must be authorized under the state's long-arm statute, and (2) must comport with the due process requirements of the Fourteenth Amendment. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). As West Virginia's long-arm statute provides jurisdiction to the full extent allowable under the United States

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT HIRERIGHT, LLC'S MOTION TO DISMISS [ECF NO. 9]**

Constitution, see W. Va. Code § 56-3-33, the Court need only consider whether the exercise of personal jurisdiction would comport with the Due Process Clause.

For a district court to assert jurisdiction over a nonresident defendant within the confines of due process, the defendant must have "minimum contacts" with the forum state such that it is consistent with "fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Fourth Circuit, following the United States Supreme Court, states that an out-of-state defendant must have minimum contacts that are purposeful to help "ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).

Whether a defendant possesses such minimum contacts is analyzed by looking to whether the plaintiff seeks to establish "specific" or "general" jurisdiction. Specific jurisdiction occurs when the defendant's contacts with the forum state form the basis of the suit. Carefirst, 334 F.3d at 397. In determining whether a defendant's contacts support the exercise of specific jurisdiction, a district court considers the following: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at

the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Id. at 396.

Where the defendant's contacts are unrelated to the basis of the suit, a court must look to the requirements of general jurisdiction. Id. at 397. The standard for finding the existence of general jurisdiction is high: the defendant must have "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416(1984); see also ESAB Group, Inc. v. Centricut, 126 F.3d 617, 623 (4th Cir. 1997) ("[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."). The hallmark of general jurisdiction is that the defendant's contacts with the forum state are so extensive that it should reasonably foresee being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

## IV. DISCUSSION

HireRight filed a motion to dismiss [ECF No. 9] pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) the Court lacks general and specific personal jurisdiction over HireRight, and (2) Plaintiff's claim

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT HIRERIGHT, LLC'S MOTION TO DISMISS [ECF NO. 9]**

against HireRight is time-barred by statute and insufficiently pleaded.[2] [See ECF No. 9]. Plaintiff responded in opposition to the motion arguing that HireRight is subject to personal jurisdiction and the complaint survives dismissal because Plaintiff's discovery of HireRight's reporting was within two (2) years of the filing of the complaint. [ECF No. 17].

Plaintiff Lane falls short of his prima facie burden in the personal jurisdiction inquiry; therefore, the Complaint must be dismissed. Fed. R. Civ. P. 12(b)(2). HireRight argues the Court does not have personal jurisdiction over Defendant because there are insufficient minimum contacts with the forum State to render the exercise of jurisdiction over the Defendant constitutionally permissible. [See ECF No. 9-1]. Plaintiff alleges that Defendant HireRight, a Delaware LLC with a principal place of business in Tulsa, Oklahoma, has sufficient contacts with West Virginia such that it availed itself of this jurisdiction and justifies the Court's exercise of specific jurisdiction. [See ECF No. 17]. Notable to the Court's discussion regarding HireRight's contacts – or lack thereof – Plaintiff alleges that "HireRight services were performed over the internet with the plaintiff while the

---

[2] Because Plaintiff's Complaint is dismissed for lack of personal jurisdiction, the Court does not analyze HireRight's second argument for dismissal under Rule 12(b)(6).

plaintiff, a West Virginia resident, was in his [West Virginia residence]." Id. at 2.

The Court's analysis here turns on these three factors: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst, 334 F.3d at 396. "The relationship [among the defendant, the forum, and the litigation] must arise out of contacts that the 'defendant himself' creates with the forum State." Walden v. Fiore, 571 U.S. 277 (2014) (citing Burger King Corp. v. Rudzewicz, 471 U. S. 462, 475 (1985)). "Fairness is the touchstone of the jurisdictional inquiry." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014) (internal quotation and citation omitted).

In the business context, the purposeful availment evaluation is: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern

disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014), (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted)). Generally, a "foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." Id.; (quoting Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012) (internal quotations omitted)). In contrast, purposeful availment lacks in cases where "the locus of the parties' interaction was overwhelmingly abroad." Tire Eng'g, 682 F.3d at 302.

Plaintiff cites a variety of cases from foreign districts in his response brief, but mostly relies upon Ratliff v. Venture Express, Inc., No. 17-C-7214, 2019 WL 1125820 (N.D. Ill. 2019).[3]

---

[3] Plaintiff also cites, with little to no discussion: Mobile Anesthesiologist of Chicago, LLC v. Anesthesia Assocs., 623 F.3d 440 (7th Cir. 2010) and John Crane, Inc. v. Shein Law Ctr., Ltd., 891 F.3d 692 (7th Cir. 2018).

...

This Court, however, knows Fourth Circuit precedent is not only persuasive, but binding. The Fourth Circuit held that a website where there is a large volume of visitors and repeated interactions from a state subjects the defendant to that state's jurisdiction. See UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 353-54 (4th Cir. 2020). In Kurbanov, twelve American record companies sued a Russian defendant who operated two "stream-ripping" websites "through which audio tracks may be extracted from videos available on various internet platforms, such as YouTube, and converted into a downloadable format (e.g., mp3)." Id. at 348. Because the defendant had "purposefully availed himself of the privilege of conducting business in Virginia and thus had a 'fair warning' that his forum-related activities could 'subject [him] to [Virginia's] jurisdiction," the Kurbanov Court found personal jurisdiction over the defendant and relied in part on the number of Virginia visitors to the website. Id. at 353.

The District Court for the Northern District of Illinois in Ratliff v. Venture Express, Inc., No. 17-C-7214, 2019 WL 1125820 (N.D. Ill. 2019) also discussed specific jurisdiction as alleged here by Plaintiff Lane. That district court found that the defendant corporation had "purposefully availed itself of the privilege of conducting business in Illinois by setting up a website through which Illinois residents could submit job

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT HIRERIGHT, LLC'S MOTION TO DISMISS [ECF NO. 9]**

applications . . . and received [Plaintiff's] application through the website." Id. at *8. In Ratliff, the record shows a back-and-forth transactional relationship between the plaintiff and the defendant's website. Id. The Ratliff Court acknowledged that "simply operating an interactive website that is accessible from the forum state is not enough for personal jurisdiction" and that the defendant is required to "in some way *target* the forum state's market." Id. at *9 (internal citation omitted) (emphasis in original). Notably, the Court analyzed that the defendant went beyond the threshold for purposeful availment because "it engaged in the hiring process with an applicant from Illinois in a way that triggered an FCRA obligation to send information to that applicant." Id.

This case is different than both Kurbanov and Ratliff cases. Even having only a prima facie burden, Plaintiff reaches here, and ultimately fails. Plaintiff provided no evidence that HireRight targets the forum state – West Virginia - with its website or other activity. No evidence regarding the website information and/or user statistics in West Virginia or any other state was provided. Plaintiff did not bother to name the website at issue. The Court is unaware of how Plaintiff used the website, how many times he accessed it, and how HireRight allegedly targeted Plaintiff with its website so as to purposefully avail itself of West Virginia's

forum laws. The Court also cannot garner from the record that HireRight had fair warning that its website, or its other forum-related activities– purportedly doing business with two other entities with locations in West Virginia - would subject it to West Virginia's jurisdiction. See ECF No. 17 Exhibit 1, "Onboarding Checklist"; see also Kurbanov, 963 F.3d at 353, Ratliff, 2019 WL 1125820 at *8-9.

The contacts found dispositive in Kurbanov have significantly more depth than anything found here. That comparative significance is a required analysis.

> In the context of online activities and websites, as here, we have also recognized the need to adapt traditional notions of personal jurisdictions. We have adopted the "sliding scale" model articulated in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), to help determine when a defendant's online activities are sufficient to justify the exercise of personal jurisdiction. See ALS Scan, 293 F.3d at 707. Regardless of where on the sliding scale a defendant's web-based activity may fall, however, "[w]ith respect to specific jurisdiction, the touchstone remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state ... creat[ing] a substantial connection with the forum state." ESAB Grp., Inc., 126 F.3d at 625 (internal quotation marks and alteration omitted).

Kurbanov, 963 F.3d at 352-53. The interactive nature of the websites and traffic was important, although not dispositive. Id.

at 353. The volume of traffic – over 1.5 million visits – was also notable. Id. Repeated interaction even in the absence of monetary transactions justified the exercise of jurisdiction. Id. The Fourth Circuit summarized the defendant's conduct establishing purposeful availment as follows:

> Rather, Kurbanov actively facilitated the alleged music piracy through a complex web involving Virginia visitors, advertising brokers, advertisers, and location-based advertising. From Virginia visitors, he collected personal data as they visited the Websites. To the advertising brokers, he sold the collected data and advertising spaces on the Websites. For end advertisers, he enabled location-based advertising in order to pique visitors' interest and solicit repeated visits. And through this intricate network, Kurbanov directly profited from a substantial audience of Virginia visitors and cannot now disentangle himself from a web woven by him and forms the basis of Appellants' claims.

Id. at 355. Using the "sliding scale" analysis, HireRight's conduct here falls fall short of the jurisdictional threshold. See id. ("Indeed, this is not a situation where a defendant merely made a website that happens to be available in Virginia.").

In 2002 – a lifetime ago in technology years – the Fourth Circuit noted

> [w]e are not prepared at this time to recognize that a State may obtain general jurisdiction over out-of-state persons who regularly and systematically transmit electronic signals into the State via the Internet based solely on those transmissions.

>      Something more would have to be demonstrated.
> And we need not decide today what that
> "something more" is because ALS Scan has shown
> no more.

ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 715 (4th Cir. 2002). That holding remains precedential here however. Something more than having an available website is necessary for a forum to have jurisdiction over a defendant. See id. at 715-16 (citing GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000) and Mink v. AAAA Dev. LLC, 190 F.3d 333 (5th Cir. 1999)).

Defendant HireRight's contacts with West Virginia are insufficient to require it to defend its interests in this state. A defendant needs more than simply being registered to do business and accept service in the state to be considered for personal jurisdiction. Compl. ¶ 4, see, e.g., Gallaher v. KBR, Inc., 2010 WL 2901626, at *10 (N.D.W. Va. July 21, 2010) (corporate registration and having agent for service of process "are not sufficient to establish general personal jurisdiction"); In re Mid-Atlantic Toyota Antitrust Litigation, 525 F. Supp. 1265, 1278 (D. Md. 1981) ("With no contact with West Virginia . . ., [defendant's] consent [by registering to do business] to jurisdiction is an insufficient basis for personal jurisdiction") aff'd, 704 F.2d 125 (4th Cir. 1983).

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT HIRERIGHT, LLC'S MOTION TO DISMISS [ECF NO. 9]**

There is no evidence that HireRight has contracts to be performed in the state, or committed any tort in the state, or makes, sells, offers, or supplies any products in the state. See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014); see also W. Va. Code § 56-3-33. As HireRight points out, numerous courts have found that the location of the consumer in an FCRA case is not enough to establish specific personal jurisdiction over an out-of-state company. See, e.g., Clement v. Carter-Young Inc., No. 4:18-cv-00074 AGF, 2018 WL 2321064, at *2 (E.D. Mo. May 22, 2018).

The best evidence of Defendant HireRight's contacts with the state of West Virginia lies in HireRight's affidavits. [ECF Nos. 9-3, 9-4]. All employees, executives, offices, and property are in locations other than West Virginia. See ECF No. 9-4, Declaration of Tom Spaeth, Ex. 2. HireRight's CFO, Tom Spaeth, submits that HireRight neither stores nor processes any data or consumer reports in West Virginia. Id. at ¶ 8. HireRight, LLC, is a citizen of every state in which its owners or members are citizens. Gen. Tech. Applications, Inc., v. Exro Ltda, 388 F.3d 114, 121 (4th Cir. 2004). It is organized under the laws of the State of Delaware with a principal place of business in Oklahoma. ECF No. 1, Notice of Removal, ¶ 12. The sole member of HireRight is Corporate Risk Holdings, LLC, and is not a West Virginia citizen. Id. The sole

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT HIRERIGHT, LLC'S MOTION TO DISMISS [ECF NO. 9]**

member of Corporate Risk Holdings, LLC, is Corporate Risk Acquisition, LLC, and is also not a West Virginia citizen. Id. Finally, the sole member of Corporate Risk Acquisition, LLC, is Corporate Risk Holdings III, Inc., and is not a West Virginia citizen. Id. The Court cannot and will not attempt to discern the reasons for this business organization structure but HireRight's members certainly does not cross the borders of West Virginia. Absent some effort to purposefully avail itself of this forum otherwise, it would be constitutionally unreasonable to force HireRight to defend itself here. See Carefirst, 334 F.3d at 396.

Meanwhile, Plaintiff admittedly supplies few instances where Defendant HireRight engaged in business in the state of West Virginia, aside from the website. First, Plaintiff quotes a business dealing with PetSmart, Inc., and Cabell Huntington Hospital by supplying an "Onboarding Checklist" that mentions HireRight by name. [See ECF No. 17, Onboarding Checklist, Exhibit 1]. Second, Plaintiff asserts HireRight is registered to do business and accept service in the state. Compl. ¶ 4. None of these recorded interactions with the forum state are sufficient to support specific personal jurisdiction. General jurisdiction, when a defendant is so "at home" in a forum state that it is subjected to personal jurisdiction, is a harder burden to meet and will not be discussed because Plaintiff failed to show a prima facie case

of specific jurisdiction. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) ("the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."). Because Plaintiff Lane falls short of his prima facie burden in the personal jurisdiction inquiry, the Complaint must be dismissed. Fed. R. Civ. P. 12(b)(2).

## V.   CONCLUSION

For the reasons discussed above, Plaintiff Lane's Complaint is **DISMISSED**. the Motion to Dismiss is **GRANTED** [ECF No. 9]. HireRight's Motion to Strike Plaintiff's untimely response to motion to dismiss is **DENIED**. [ECF No. 20].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

**DATED:**   September 24, 2021

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE